(48 Misc. Rep. 82.)

### WEY et al. v. O'HARA et al.

(Supreme Court, Special Term, Columbia County.　August, 1905.)

1. PUBLIC OFFICERS—ACTIONS TO PREVENT WASTE—QUALIFICATIONS OF PLAINTIFFS.

Code Civ. Proc. § 1925, authorizing an action against officers of a municipality to prevent waste of or injury to its estate to be maintained by a citizen who is a resident and taxpayer therein, is independent of Laws 1881, p. 709, c. 531, authorizing that action and other actions against such officers by one assessed for $1,000 and who shall furnish bond; the former being amended by Laws 1892, p. 1052, c. 524, and the latter by Laws 1892, p. 620, c. 301, so as to authorize action by a corporation.　So one bringing action under the Code need not furnish bond or be assessed for any particular amount.

2. COUNTIES—LIABILITY FOR EXPENSES OF SHERIFF.

County Law, Laws 1892, p. 1793, c. 686, § 230 (18), authorizing the county supervisors to declare a charge against a county the expenses of a county officer in defending an action against him for "an official act," applies only to official acts in which the public has a concern; otherwise it would contravene Const. art. 8, § 10, inhibiting a county from giving money in aid of an individual, or incurring indebtedness except for county purposes.　It does not apply to the act of a sheriff in returning an execution.

8. COUNTIES—CLAIMS—REJECTION BY SUPERVISORS.

A claim against a county, rejected by the supervisors on its merits, cannot be considered by a subsequent board.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Counties, § 325.]

Action by Benjamin Wey and others, as taxpayers, against Michael O'Hara and others, composing the board of supervisors of Greene county, and I. Wheeler Brandow, to prevent the payment to the defendant Brandow, a former sheriff of Greene county, of a claim presented by him to said board of supervisors at their annual session in 1904, and audited and allowed by said board, but not yet paid; such claim being for costs incurred by said Brandow in successfully defending an action brought against him by an individual for improperly returning unsatisfied an execution issued to him as such sheriff.　Judgment for plaintiffs.

A. M. Murphy (Frank H. Osborn, of counsel), for plaintiffs.
Pierre S. Jennings, for defendant Brandow.

COCHRANE, J.　At the threshold of this discussion there is presented for consideration the relation to each other of two statutory provisions—section 1925 of the Code of Civil Procedure, and chapter 531, p. 709, of the Laws of 1881, entitled "An act for the protection of taxpayers," as amended by chapter 673, p. 885, of the Laws of 1887, and by chapter 301, p. 620, of the Laws of 1892.　The action is concededly brought under section 1925 of the Code of Civil Procedure, without reference to the act of 1881 as amended. The latter act requires that the plaintiffs shall be assessed for $1,000, and shall furnish a bond as therein provided, which requirements do not exist in section 1925; the only requirement there being that the plaintiffs shall be citizens, residents, and taxpayers within the municipality affected.

It is strenuously urged by the learned counsel for the defendant Brandow that this action must fail because the plaintiffs have not brought themselves within the said act of 1881 as amended, by alleging and proving the amount of their assessment for taxation, or by executing the said bond. The question thus raised does not seem to have been decided, or even considered, in any reported case. There are dicta and judicial expressions in some cases apparently favorable to both sides of the contention; but, as the question was not involved or under consideration in any of those cases, they are of little or no value in reaching a present conclusion. I shall therefore dismiss them as throwing no light on the question, merely observing that the case of Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263, cited by the defendant, not only did not involve the question here raised, but was decided before the Code provision was amended in 1892, the significance of which amendment will be hereafter considered.

The act of 1881, as amended, is much more comprehensive than the Code provision. Many actions may be maintained under the former statute which could not be maintained under the Code. The latter merely provides for an action "preventing waste of or injury to the estate," etc., of the municipality affected; whereas the former act provides for an action not only "to prevent waste or injury," but also "to prevent any illegal official act," and also to enforce restitution. This distinction in the relative comprehensiveness of the two statutes appears from what was said in Bush v. O'Brien, 164 N. Y. 205, at page 215, 58 N. E. 106, at page 109, as follows:

"The statute under which this action was brought authorizes a taxpayer to bring an action to prevent waste, and also to prevent an official illegal act. If the action was based upon the provision of the statute to prevent waste, then it would be necessary to show that the city was not justly indebted in the amount stated in the judgment; for, if it was, there could be no waste. This action, however, was brought under the other provision of the statute, to prevent an official illegal act."

A brief reference to the history of the two legislative enactments indicates the legislative intent to maintain two independent provisions, separate and distinct from each other. "The history of legislation on this subject shows how progressive have been the enactments. Instead of an abridgment of its scope, or a relaxation of its rigor, the Legislature has extended its sweep and augmented its severity, and that is a sufficient admonition against any circumscription of its operation. All the statutes have been in the interest of the public." Adamson v. Union Railroad Company, 74 Hun, 9, 26 N. Y. Supp. 136. The Code provision was enacted in 1880. The same Legislature, by subdivision 48, § 1, c. 245, p. 373, repealed chapter 161, p. 467, of the Laws of 1872, which latter act was the parent legislation on this subject; and thereafter the same Legislature, by chapter 435, p. 620, of the Laws of 1880, amended chapter 526, p. 578, of the Laws of 1879, which latter act was an amendment to said act of 1872. Said chapter 435, p. 620, of the Laws of 1880 contained provisions for enforcing restitution of

moneys improperly paid or diverted, as well as for the prevention
of waste or injury.   Thus the same Legislature of 1880 placed in
the statute books two separate:and disconnected provisions, with-
out reference to each other, differing in their scope and compre-
hensiveness; the one requiring that the plaintiff should be as-
sessed for $1,000 and should give a bond, while the other, being the
Code provision, contained no such requirement.   In the following
year said chapter 435, p. 620, of the Laws of 1880 was repealed,
and substantially re-enacted, with some modifications, by the act
in question, chapter 531, p. 709, of the Laws of 1881, which was
an independent statute; and in it for the first time were the words
"to prevent any illegal official act on the part of any such officers."
This latter act was amended in 1887 so as to enlarge the scope of
the remedy provided, and in 1892 so as to permit the action by a
corporation as well as by an individual.   In none of these legis-
lative enactments was there any reference to the Code provision,
nor anything to indicate an intention on the part of the Legislature
that such enactments were exclusive of the Code provision, nor that
the latter was merged in or superseded by such enactments.   But
in the year 1892 the same Legislature, by chapter 301, p. 620, amend-
ed the act of 1881 so as to permit an action to be maintained by a
corporation, and also by chapter 524, p. 1052, amended section 1925
of the Code of Civil Procedure in the same particular, thus clearly
recognizing the existence of the Code provision, and demonstrating
that it was not the legislative design that section 1925 should be
absorbed or merged in the amended act of 1881 or superseded
thereby, and that it is not a dead letter on our statute books.

If, then, an action cannot be maintained under section 1925, with-
out reference to the amended act of 1881, as the defendant claims,
it logically follows by a parity of reasoning that an action cannot
be maintained under the latter act without reference to the Code
provision.   But this involves us in some difficulties, as we shall
presently see.   The learned counsel for the defendant correctly and
clearly states the rule in construing statutes as follows:

"Courts will look to all parts of the same statute, to other statutes, and to
the general principles of law, and assign such meaning to the words of the
statutes considered as will make them all effective."

In People ex rel. Killeen v. Angle, 109 N. Y. 575, 17 N. E. 418,
the rule is stated as follows:

"It is a primary rule of construction that statutes must be so interpreted as
to give effect to every part thereof and leave each part some office to per-
form; and any construction which deprives any part of a statute of effect
and meaning, when it is susceptible of another interpretation, is wholly with-
out support from any authority."

The theory of the defendant, however, does not stand the test
of the application of this salutary and fundamental rule of construc-
tion invoked by himself; for, if the two statutes must be applied
simultaneously and coincidently, as he maintains, then the follow-
ing words in section 1925, relating to the qualifications of a plaintiff,
are and always have been useless, inoperative, and ineffective, viz.:

"Who is assessed for and is liable to pay or within one year before the commencement of the action has paid a tax therein"—because that qualification of a plaintiff has always been exactly covered by the provision in the act of 1881, and in the corresponding act which preceded it (chapter 435 of the Laws of 1880), that the plain-. tiff must be liable to pay or within one year must have paid a tax in the affected municipality on an assessment of $1,000, whereas no such result follows if we regard the two statutes as independent of each other. The theory of the defendant also leads to these incongruous and inconsistent results: That in an action to prevent waste a plaintiff, unless a corporation, must in all cases be a citizen, resident, and taxpayer in the municipality affected, as required by the Code provision, whereas a nonresident taxpayer in such municipality, unless a corporation, can in no case maintain such action; and that a corporation taxpayer within such municipality may maintain such action to prevent waste, irrespective of the place of its legal residence, because under section 1925 a corporation plaintiff is not restricted in its residence as is an individual plaintiff. The Legislature did not intend such discrimination in favor of a corporation as against an individual, nor in favor of a resident taxpayer as against a nonresident. Statutes should not only be construed so as to render all parts thereof effective, but also, if possible, so as to avoid illogical and unreasonable results. Such results may be obviated only by regarding the two acts as independent, because it then follows that a taxpayer within the municipality affected, whether individual or corporation, resident or nonresident, may have complete relief under one or the other of the statutes. Thus by a process of reductio ad absurdum the fallacy of the defendant's theory as to the interdependence of the two statutes in question seems to be demonstrated. My conclusion is that those statutes are independent of each other, and are intended to provide two separate and distinct remedies for cases which may severally fall within the provisions of either statute standing by itself and without reference to the other. In a case, therefore, where relief may be had under section 1925, an action may be maintained thereunder by any person bringing himself within its provisions, without reference to chapter 531, p. 709, of the Laws of 1881 as amended, and consequently it was not necessary for the plaintiffs to allege or prove the amount of their assessment or to furnish the bond required by the latter act.

Payment by the county of the claim in question is sought to be justified under subdivision 18 of section 230 of the county law (Laws 1892, p. 1793, c. 686), which makes a county charge:

"All damages recovered against, or costs and expenses lawfully incurred by a county officer in prosecuting or defending an action or proceeding brought by or against the county or such officer, for an official act done, when such act was done, or such action or proceeding was prosecuted or defended pursuant to law, or by authority of the board of supervisors; and any such damages so recovered, or costs and expenses incurred by any such officers, for any act done in good faith in his official capacity, without any such authority, may be made a county charge by a majority vote of all the members elected thereto."

This statute must be construed in connection with section 10 of article 8 of the state Constitution, which provides that:

"No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual * * * nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

The claim in question is for costs and expenses incurred by the sheriff in defending an action brought against him by an individual for wrongfully returning unsatisfied an execution. His act in returning such execution was in one sense "an official act," but it was not an official act in which the public had any concern. A sheriff, in executing civil process, is to a certain extent subject to the directions of the suitor who delivers the same to him. For his services in executing such process the sheriff receives fees which, unless otherwise provided by statute, he retains for his own use for the performance of such services. There is a wide distinction between the official acts of a sheriff in executing civil process for an individual and the official acts performed by him for the benefit of the county, or in which the public generally have an interest. It is the latter class of acts for which the sheriff may be indemnified under the provisions of the county law above set forth. The statute must be construed in such a way as to harmonize it with the Constitution.

In chapter 700, p. 1527, of the Laws of 1899, provision was made for the reimbursement of expenses incurred by a city or county officer in successfully resisting any trial or proceeding "to remove him from office or in which it is sought to convict him of any crime in the performance of or in connection with his official duties." This act was held to violate the constitutional provision above set forth. Chapman v. City of New York, 168 N. Y. 80, 61 N. E. 108, 56 L. R. A. 846, 85 Am. St. Rep. 661. The reasoning of the court in that case is, I think, conclusive against the constitutionality of the claim in question. If reimbursement of expenses incurred by an official in resisting removal from office, or in resisting conviction of crime in connection with his official duties, is violative of the fundamental law, a fortiori reimbursement of expenses incurred by such official in resisting a civil action for an act in which the public is unconcerned is also violative of such fundamental law. As was said in the case last cited:

"It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office, he assumes the risk of defending himself against unfounded accusations at his own expense. * * * There was no legal liability or moral obligation on the part of the city to pay his expenses, which were not necessary for the common good and general welfare of the municipality, nor public in character, nor, so far as appears, sanctioned by its citizens."

The Legislature, of course, did not intend that the provision of the county law in question should offend against the Constitution. And it is not necessary to hold that it does so offend. Full force and effect can be given to such statute by confining it to such

official acts as are necessary for the common good and general welfare of the people of the county, or are in some way identified with a county purpose. Whether such a claim as this would be identified with a county purpose in counties where the sheriff receives a salary, and the fees for executing civil process are covered into the public treasury, is a question which is not here involved. The action brought against the sheriff for wrongfully returning the execution was in this particular instance a hardship. He acted in good faith and honestly, and properly performed his duty. He was vindicated by the court. But it was only such a hardship as every man, whether in public or private life, experiences when an unjust action is brought against him. He is obliged to defend himself at his own expense. In the case of a public officer such burdens and responsibilities are incidental to his office. They constitute the penalty he must pay for the privilege of holding his office. It is better that individual cases of hardship should occur than that the door should be opened for the payment out of the public treasury of claims not as meritorious as this, thereby placing a premium on negligence and inefficiency on the part of incompetent public officials.

A further objection to this claim is that it has twice been rejected by former boards of supervisors. Those rejections were on the merits. The nature of the claim fairly appeared on the face thereof as the same was presented to such boards, and was such that no evidence or explanation was required. Such boards were at liberty to act on their own knowledge, or to seek information from any source obtainable, and it was not necessary, before rejecting the same, to send notice to the claimant. People ex rel. Rice v. Board of Supervisors of Orleans County, 98 App. Div. 390, 90 N. Y. Supp. 318; People ex rel. Caldwell v. Board of Supervisors of Saratoga County, 45 App. Div. 42, 60 N. Y. Supp. 1122. No subsequent board of supervisors was at liberty to consider the same claim after such rejection. Osterhout v. Hyland, 27 Hun, 167, 173; Osterhoudt v. Rigney, 98 N. Y. 322; People ex rel. Myers v. Barnes, 114 N. Y. 317, 326, 20 N. E. 609, 21 N. E. 739; Bank of Staten Island v. City of New York, 68 App. Div. 231, 74 N. Y. Supp. 284.

There must be judgment for the plaintiffs, with costs.