## WEBSTER v. NUNN. (No. 2065.) *

(Court of Civil Appeals of Texas. Amarillo. Feb. 7, 1923. Rehearing Denied Feb. 28, 1923.)

1. **Libel and slander** &#x29e8;48(2)—**Criticism of city secretary held not privileged if untrue.**

A newspaper headline "Robbed Woman of Job—Now He is Guessing," was a comment upon and a criticism upon the public act of a city secretary, the body of the article stating that the woman in question had been chief clerk, and had been let out to make a place for a man; but such article was not privileged if untrue, and was libelous regardless of good faith under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5595, 5597, 5598.

2. **Libel and slander** &#x29e8;48(2)—**Qualified privilege as to articles concerning official action.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5597, before public matter concerning official acts can be classed as qualifiedly privileged, it must be found that the facts stated were true, were stated in good faith, and were reasonable and fair and that defendant had reasonable grounds for believing them to be true does not tend to make them privileged; but findings to this effect will entitle matter complained of to be classed as qualifiedly privileged, even though it is libelous per se under article 5595.

3. **Libel and slander** &#x29e8;19—**Article must be considered as a whole.**

In determining whether or not a newspaper article is libelous, it must be considered as a whole, and the body of the article must be considered in connection with the headline.

4. **Libel and slander** &#x29e8;123(2)—**Whether article libelous is a question for the court.**

If a newspaper article is unambiguous, it is the duty of the court to instruct the jury as to whether or not it is libelous.

5. **Libel and slander** &#x29e8;16—**Newspaper article held libelous per se.**

A newspaper statement concerning a public official to the effect that he robbed a woman of a job tends to expose him to public hatred, contempt, or ridicule, since it implies that her dismissal was unjust and unfair, and is libelous per se, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5595.

6. **Libel and slander** &#x29e8;5, 51(5)—**Malice necessary where article privileged, but may be implied where no privilege.**

If an article concerning a public official is privileged, then, in order to recover, the libeled official must prove actual malice; but if the article is not privileged malice may be implied.

7. **Libel and slander** &#x29e8;100(2)—**Unnecessary to allege and prove special damages where article libelous per se.**

Where an article is libelous per se, it is not necessary to allege and prove special damages.

8. **Libel and slander** &#x29e8;48(2)—**Discharge of one not paid out of municipal funds not official act.**

If a public official has no legal warrant to appoint a chief clerk, and does not pay her out of the public funds, his act in appointing and discharging her is not an official act, and not one in which the public has any concern, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5597, making comments upon official acts qualifiedly privileged.

&#x29e8;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 25, 1923.

Appeal from District Court, Dallam County; Reese Tatum, Judge.

Action by George C. Webster against J. E. Nunn. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

R. E. Stalcup, of Dalhart, for appellant. Tatum & Strong, of Dalhart, and Adkins & Kimbrough, of Amarillo, for appellee.

HALL, C. J. Appellant, Webster, sued the appellee in the district court of Dallam county to recover damages for libel. The appellee is the publisher and owner of the Amarillo Daily News, and it is alleged that on the 27th day of March, 1921, the following article was published in said paper:

"Robbed Woman of Job—Now He Is Guessing.

Special to the News: Dalhart, March 26th. City Assessor Geo. C. Webster let out his chief clerk to make place for a man, and now he has a fight on his hands to succeed himself for a second term. Miss Lillie Hampton has been the main reliance in the office of city secretary, which includes the duties of assessor and collector, for ten years. She was let out by Webster to make place for John Stalcup, who is also county treasurer and now Miss Hampton is a candidate for city secretary against Webster. The Webster-Hampton fight is the only contest of the city election to be held April 5th. The only candidate for city treasurer is J. A. Childers; for alderman for ward 1, R. P. Hutton; ward 2, F. E. McDowell; ward 3, J. D. Starnes; ward 4, there are to be two aldermen, and E. T. Adair and E. G. Schuhart are the candidates."

Amongst other defenses appellee, Nunn, answered specially as follows:

"For further answer, if answer be required, the defendant says that, as is shown by plaintiff's petition, the occasion of the alleged publication was a privileged one, the plaintiff being a candidate for office at the time of said publication, and his said candidacy being the occasion of said publication, and defendant says that by the statutes of Texas the reasonable or fair comment or criticism of the official acts of public officials or other matters of public concern, published for general information, are privileged; and the defendant says that said publication, if made, was only a reasonable and fair comment or criticism of the official acts of plaintiff as a public official, published for general information, and that said publication, if made, was privileged, both under said statutory grounds and because it was made with reference to the candidacy of plaintiff for office, and was not untruthful or false, and not unfair and not unreasonable, and was not malicious and was not made with any wrongful intent or intent to injure plaintiff, but was in all respects a privileged publication, made without malice, and defendant is not liable."

After the introduction of all the evidence the court directed a verdict for the appellee.

Under appropriate propositions the appellant contends that the evidence was sufficient to require the court to submit the issue of malice to the jury; that the article is libelous per se, and, even, though it be held not to be libelous per se, the question as to whether it is a reasonable and fair comment or criticism upon plaintiff's official acts should have been submitted under all the evidence to the jury. It is further urged that the language of the statute itself makes it a question of fact whether or not the article in this case is a reasonable and fair comment upon official acts. The appellant further insists that the article does not relate to official acts which are duties fixed by law, but the charges pertain to matters done by appellant not as an official, and are therefore not privileged under the statute. It is not controverted that the article was published and circulated. The appellant himself testified that the statement in the article to the effect that he let his chief clerk out in order to make a place for a man was not true; neither was it true that he had robbed a woman of her job, nor was it true that he had let Miss Hampton out in order to make place for John Stalcup.

In so far as the statutory law of this state relating to libel and slander applies to the facts of this case, it is as follows: V. S. C. S. art. 5595; defines libel as a defamation expressed in printing, tending to injure the reputation of any one who is alive, and thereby exposing him to public hatred, contempt, or ridicule, or financial injury, or to impeach the honesty, integrity, or reputation of such person. Id., art. 5597, provides that the publication by a newspaper of a reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern, published for general information, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice. It is provided by Id., art. 5598, that nothing in title 84 shall be construed to take away any now or at any time heretofore existing defense to civil action for libel, either at common law or otherwise, but all such defenses are thereby expressly preserved. It was not intended· by article 5597 to make publications of the character under consideration absolutely privileged. Under the general law of libel and slander communications and publications of legislative, judicial, and executive proceedings, when they may be considered strictly as such, are absolutely privileged. Koehler v. Dubose (Tex. Civ. App.) 200 S. W. 238. The reasons for extending the rule of absolute privilege to such proceedings is that their publication is advantageous for the public interest, and that persons should not be in any way fettered in their statements, since the due administration of justice requires that every one should be permitted to speak his mind freely in relation to such matters. As to matters which are only qualifiedly privileged, it is said in 25 Cyc. 401–405:

"The interests of society require that immunity should be granted to the discussion of public affairs, and that all acts and matters of a public nature may be freely published with fitting comments or strictures, but the privilege is limited strictly to comments and criticism, and does not extend to protect false statements, unjust inferences, imputations of evil motives, and attacks upon private character, the publisher being responsible for the truth of what he alleges to be facts."

"Comment on and criticisms of the acts and conduct of public men are privileged if fair and reasonable and made in good faith, but the right to criticize does not embrace the right to make false statements of fact, to attack the private character of a public officer or to impute to him malfeasance or misconduct in office. * * *"

"When a man becomes a candidate for an office his character for honesty and integrity and his qualifications and fitness for the position are put before the public, and are thereby made proper subjects for comment, but as a general rule false allegations of fact, charging criminal or disgraceful conduct, or otherwise aspersive of character, are not privileged."

[1] The matter under consideration consists of two separate parts. The headline, "Robbed Woman of Job—Now He Is Guessing," is a comment upon and a criticism of the public act of appellant as a public official. The body of the article as a plain statement of facts, declaring, in substance, that Miss Hampton had for 10 years been chief clerk and main reliance in the city assessor's office; that appellant, as city assessor, had let her out of the office in order to make a place for John Stalcup, a man, and that now she is a candidate opposing appellant in his race for re-election. Appellee suggests that the appellant had the legal right to let out his chief clerk to make a place for John Stalcup if he desired to do so, and he could let her out for any reason satisfactory to himself, or even without any reason; and the newspapers would have the right under the law to publish such fact, and to do so would not be actionable. This suggestion would be sound as a proposition of law if the facts were true. Article 5597, subd. 4. We understand the holding in Galveston Tribune Publishing Co. v. Johnson (Tex. Civ. App.) 141 S. W. 302 (writ of error refused), to be that, in order to make an article of this kind privileged, the facts stated must be true, fair, and impartial. Good faith has no bearing on the question of privilege. San Antonio Light Pub. Co. v. Lewy, 52 Tex. Civ. App. 22, 113 S. W. 575. The rule is stated in Newell, Slander and Libel (3d Ed.) with reference to the truth of published facts as follows:

Section 684. "Criticism and comment on well-known or admitted facts are very different things from the assertion of unsubstantiated facts. A fair and bona fide comment on a matter of public interest is an excuse of what would otherwise be a defamatory publication.

The statement of this rule assumes the matter of fact commented upon to be somehow ascertained. It does not seem that a man may invent facts and comment on the facts so invented in what would be a fair and bona fide matter on the suspicion that the facts were true. If the facts as a comment upon which the publication is sought to be excused do not exist the foundation fails. There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism, not only by the press, but by all members of the public, but the distinction cannot be too clearly borne in mind between comment or criticism and allegations of fact as that disgraceful acts have been committed or discreditable language used. It is one thing to comment or to criticize even with safety the acknowledged or proved acts of a public servant, and quite another to assert that he has been guilty of particular acts of misconduct. To state matters which are libelous is not comment or criticism. Slight, unintentional error, however, will be excused. If a writer, in the course of temperate and legitimate criticism, falls into error as to some detail or draws an incorrect inference from the facts before him, and thus goes beyond the limits of the strict truth, such inaccuracies will not cause judgment to go against him if the jury are satisfied, after reading the whole publication that it was written honestly, fairly, and with regard to what truth and justice required. It is not to be expected that a public journalist will always be infallible."

[2] With reference to the character of the comments and criticisms, the same author says:

Section 687. "Matters of public interest must be discussed temperately. Wicked and corrupt motives should never be wantonly assigned, and it will be no defense that the writer at the time he wrote honestly believed in the truth of the charges he was making, if such charges be made recklessly, unreasonably, and without any foundation in fact. Some people are very careless, especially in politics, and can readily believe any evil of their opponents. There must, therefore, be some foundation in fact for the charges made; the writer must bring to his task some degree of moderation. So long as a writer confines himself to discussing the public conduct of public men, the mere fact that motives have been unjustly assigned for such conduct is not of itself sufficient to destroy this defense. A line must be drawn between criticism upon public conduct and the imputation of motives by which that conduct may be supposed to be actuated. One man has no right to impute to another whose conduct may be fairly open to ridicule or disapprobation, base, sordid and wicked motives, unless there is so much ground for the imputation that a jury shall find not only that he had an honest belief in the truth of his statements, but that his belief was not without foundation."

We think it is clear from the language of article 5597, V. S. C. S., that before the published matter under consideration can be classed as qualifiedly privileged it must be found that the facts stated in the body of the

article are true. That the facts were stated in good faith and that the appellee had reasonable grounds for believing them to be true does not tend to make them privileged. Furthermore, the comment or criticism in the headline must be reasonable and fair. Findings to this effect would entitle the matter complained of to be classed as qualifiedly privileged, and even though it is libelous per se under article 5595, and could not be made the basis of an action for damages without the proof of actual malice. The appellee's answer presented each of these issues. He alleged that the appellant was a candidate at the time of the publication; that the matter published was a reasonable and fair comment or criticism of appellant's official acts; that the article was published for general information; that it was not untruthful or false; that it was not malicious, and was not made with any wrongful intent to injure plaintiff. When the pleadings of both parties are considered, they are sufficient to require the submission of the above suggested issues of fact to the jury. As we construe the statute, proof of express malice by the appellant is not required unless the jury should find that the facts stated are true, and that the comment or criticism evidenced by the headline was reasonable and fair. Galveston Tribune v. Johnson, supra; San Antonio Light Publishing Co. v. Lewy, supra. The evidence, considered from appellant's standpoint, was sufficient to require the court to submit such issue. Appellant denied the truth of the main facts published, and no effort was made by appellee to contradict his testimony upon this point.

[3-5] In determining whether or not the article is libelous, it must be considered as a whole; that is, the body of the article must be considered in connection with the headline. 17 R. C. L. 350, par. 97; Cranfill v. Hayden, 97 Tex. 544, 80 S. W. 609; Express Publishing Co. v. Wilkins (Tex. Civ. App.) 218 S. W. 618. If the article when so considered is unambiguous, it is the duty of the court to instruct the jury as to whether or not it is libelous. Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 847, 152 S. W. 167. The tendency of the body of the article, we think, is to charge that the appellant has unjustly or unfairly dismissed a woman, an employee, from his office in order to make place for a man who already held an office. It seems to have made the same impression upon the night editor McCorkle, who says that it is doubtful if he changed a word in the communication as received by mail, and who further says that he wrote the headline after reading the article, and without making any inquiry of any one, and not even of Lyons, the reporter, who sent it from Dalhart. The statement that he has robbed a woman of a job does not, of course, impute to appellant the commission of a crime, but in our judgment its tendency is to expose

him to public hatred, contempt, or ridicule, since it implies that her dismissal was unjust and unfair, and it is therefore libelous per se.

[6, 7] It follows from what has been said that, if the facts stated in the publication are untrue, or the comment and criticism thereon are not fair and reasonable, then the article is not privileged. Wortham-Carter Publishing Co. v. Littlepage (Tex. Civ. App.) .223 S. W. 1043. If under the jury's findings it is held privileged, then, in order to recover, appellant must prove actual malice. Houston Chronicle v. McDavid (Tex. Civ. App.) 157 S. W. 224; Galveston Tribune v. Johnson, supra. If under the jury's findings the article is not privileged, then malice is implied (25 Cyc. 372; Ledgerwood v. Elliott (Tex. Civ. App.) 51 S. W. 872; Holt v. Parsons, 23 Tex. 9, 76 Am. Dec. 49), whether the article is or is not libelous per se. Neither is it necessary in such case to allege and prove special damages. Guisti v. Galveston Tribune Co., supra.

[8] We are not able to determine from the record whether Webster acted in his official capacity in appointing and dismissing Miss Hampton. V. S. C. S. art. 784, provides in part that—

"The other officers of the corporation shall be a treasurer, an assessor and collector, a secretary, a city attorney, a marshal and city engineer and such other officers and agents as the city council may from time to time direct."

It is not shown that the city council had provided for the appointment of a chief clerk or deputy for the position held by Webster. Until it appears that Miss Hampton held the position by authority of the statute, or had been appointed under some authority conferred by the city council, she was in no sense an officer. The record tends to show that she was acting merely as the alter ego of Webster, and was employed to do the clerical work imposed by law upon him as an officer of the city. If he had no legal warrant to appoint her, and she was not paid out of city funds, his act in appointing and discharging her is not an official act, and certainly not one in which the public had any concern. As suggested by appellee, Webster had the right to appoint and dismiss her at his option, and no one could be heard to complain. She was paid by Webster out of funds received by him, and belonging to him in virtue of his office, and, while her compensation under his contract with her was measured by the amount of compensation received by him, it was not paid to her either, as a deputy or subordinate officer, recognized, in so far as the record shows, by either the statute or any authority of the city council. Webster's liability to her for compensation, as stated in the case of Rice v. Penfield, 49 Hun, 368, 2 N. Y. Supp. 641, is not a liability incurred by him by

doing an act in his official capacity, but is a liability arising out of a mutual contract voluntarily entered into with her for his own convenience. It is said in Wey v. O'Hara, 48 Misc. Rep. 88, 95 N. Y. Supp. 85:

"A sheriff, in executing civil process, is to a certain extent subject to the directions of the suitor who delivers the same to him. For his services in executing such process the sheriff receives fees which, unless provided by statute, he retains for his own use for the performance of such services. There is a wide distinction between the official acts of a sheriff in executing civil process for an individual and the official acts performed by him for the benefit of the county, or in which the public generally have an interest."

That action arose under a statute of New York, which authorizes the county commissioners to declare as a charge against a county the expenses of the county officer in defending an action against him for an official act, in which the sheriff sought to be reimbursed for expenses arising under the act. The court held that he was not entitled to be reimbursed. In the case of Chase v. Cochran, 102 Me. 431, 67 Atl. 320, the Supreme Court of Maine, in discussing the right of certain officers to employ a third party to lay out a road across the private property of another and construct a bridge, held that they could not clothe the party so employed to do so, declaring that—

"All acts of officials are not official acts but only such as are done under some authority derived from the law, or in pursuance of prescribed duties."

In the case of King v. Brown, 100 Tex. 109, 94 S. W. 328, Judge Brown, speaking for our Supreme Court, in a suit against the sheriff and his deputies for damages for shooting plaintiff, said:

"The character of the act, whether official or not, does not depend upon its lawfulness, but upon the fact that the person who performs it is in fact an officer and purports to act in his official capacity and does act by virtue of authority conferred by law."

So, unless it appears upon another trial that Miss Hampton held a position created under the statute, or the authority thereof, Webster's action in appointing and in dismissing her was not an official act, and was not one in which the public was concerned, and the published article would therefore not be privileged, under V. S. C. S. art. 5597.

We will not discuss the evidence relating to the issue of malice, in view of another trial, further than to say that, if under the findings it is determined that the article is privileged, and the evidence upon the issue of actual malice is the same upon another trial, then such issue should also be submitted to the jury.

Because the court erred in directing a verdict, the judgment is reversed, and the cause is remanded.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes