246 S.W.2d 785 (1952)
VIETMEIER
v.
VOSS.
No. 42657.
Supreme Court of Missouri, Division No. 1.
March 10, 1952.
*786 Barnhart & Wood, C. V. Barnhart and Marvin S. Wood, all of St. Louis, for appellant.
Wilbur C. Schwartz and Harry M. James, St. Louis (Joseph Nessenfeld, St. Louis, of counsel), for (defendant) respondent.
CONKLING, Presiding Judge.
James Milton Vietmeier, plaintiff-appellant, hereinafter called plaintiff, appealed from an adverse judgment entered upon the verdict of the jury, in his personal injury action against George Christian Voss, defendant-respondent, hereinafter called defendant, wherein plaintiff had prayed damages of $10,000.
Plaintiff, a minor five years of age, was struck by the automobile operated by defendant, about 3:30 p. m. on October 25, 1949, while the former was running in the street on Kossuth Avenue near Rush Place in the City of St. Louis, Missouri. Plaintiff, being only five years of age, was not offered as a witness. No eyewitness to the collision was called in his behalf. In his effort to make a jury case plaintiff read in evidence portions of the deposition of defendant. Defendant testified personally in his own behalf. At the close of all the evidence defendant moved for a directed verdict in his favor. The court declined to direct such verdict. Plaintiff's case was submitted to the jury upon the single theory that defendant was liable for a violation of the humanitarian doctrine in failing to sound a warning. On this appeal plaintiff makes the single complaint that the court erred in giving instruction 3, given at the request of defendant. Defendant contends that all the evidence does not make a submissible case which the court could permit the jury to consider, and, that the giving of defendant's instruction 3 was not error.
From the record before us the jury could have found these facts: That Kossuth Avenue extends east and west and is 36 feet wide between curbs; that Rush Place extends north from Kossuth (but not south therefrom) and is 36 feet wide from building line to building line; that there is an apartment building built up to the building line on the northeast corner of Kossuth and Rush Place; that there are neither sidewalks nor curbings on Rush Place, but Rush Place is paved; and that it was a fair day and the streets were dry.
The defendant testified on the trial that he was driving his Dodge automobile home *787 from work and going west on Kossuth with the left (south) side of his car running west about a foot north of the center line of Kossuth; that when defendant's car was a block east of Rush Place it was moving about 25 to 27 miles per hour; that there was no other motor traffic on Kossuth at all; that defendant's car moved west to Rush Place at the same speed and in the same relative position in the street and there still was no other motor traffic on Kossuth and no motor cars parked on Kossuth; that when defendant's car was about even with (south of) the east building line of Rush Place defendant first saw plaintiff; that at that time plaintiff was running fast out of Rush Place, moving into Kossuth, and was even with the north curb of Kossuth; plaintiff was then running southwest "sideways he wasn't facing me (defendant) he was facing west, he didn't see me at all"; that plaintiff never looked in the direction of defendant's car and never slackened speed until he ran into the side of defendant's car; and that when defendant first saw plaintiff, defendant's car was still moving 25 to 27 miles per hour.
Defendant further testified: "Q. Did you do anything, or what was your immediate reaction when you noticed the boy in that position? A. I tried my best to avoid him (plaintiff) running into me * * * I just applied my brakes and swerved as hard as I could to the left" (south), but that plaintiff "ran into the right (north) side of the car" at the front door while the car was still moving; that at the moment of impact the automobile was moving southwest and the left front wheel of defendant's automobile came to a stop about four feet north of the south curb of Kossuth; and that after the automobile came to a stop plaintiff was lying about three feet behind the rear end thereof and just north of the center line of Kossuth. Defendant alighted from his automobile, picked plaintiff up and carried him out of the street. A ball, which plaintiff was apparently running to recover was found nearby in the street. Defendant admitted he did not sound the warning horn on his automobile.
The only other eyewitness, Charles Nenninger, Jr., testified he was on Rush Place, near to and north of Kossuth, riding a bicycle south toward Kossuth and witnessed the occurrence; he testified he saw plaintiff walking at the northwest corner of Kossuth and Rush Place; that plaintiff then ran south "on an angle" out into Kossuth, "looking toward the side", and hit the rear of the right front door of the automobile. He also testified: "I seen him (plaintiff) hit this car and the car tried to avoid the boy by swerving"; that when the plaintiff ran into the side of the automobile the automobile was then south of the center line of Kossuth; and that the automobile swerved to the south side of the street and stopped with the left front corner about three feet from the south curb.
Other witnesses were called but only the defendant and Charles Nenninger, Jr., testified that they witnessed the occurrence.
We first consider defendant's contention that the evidence does not support an inference of negligence under the humanitarian theory of failure to warn. If no jury case was made we need not consider plaintiff's contentions as to instruction 3. The facts as to liability are not in dispute. Photographic exhibits showing the streets in question are before us. But the record is far from satisfactory as to certain of its phases. Certain phases of it were not developed in detail. It does not appear at what speed plaintiff ran or how far he ran. How far the automobile ran after it started to swerve is not in the record. Sometimes humanitarian cases require niceties in calculations for the doctrine begins to operate and seizes the facts when imminent peril arises. The duty to make his case is upon plaintiff and he must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence. If the evidence presents a situation from which liability or nonliability may be equally inferred, the court must declare that no case has been made. Krause v. Pitcairn, 350 Mo. 339, 167 S.W.2d 74, 79, State ex rel. Dutcher v.
*788 Shelton, 249 Mo. 660, 156 S.W. 955, 965. This involves the question of whether the evidence is in truth substantial, which is one of law, as distinguished from mere conflict in the evidence, which is one of fact for the jury.
When defendant's west-bound automobile reached the east building line of Rush Place it was moving 25 to 27 miles per hour. The north (right) side of the automobile was then 11 feet south of the north curb of Kossuth. The automobile was then moving approximately 39 feet per second. When the automobile was at the east building line of Rush Place defendant saw plaintiff, who was then at the northwest corner of Rush Place and Kossuth, and even with the north curb of Kossuth, running southwest into Kossuth Avenue. Prior to that time there had been nothing in the situation at all to put defendant on notice that plaintiff might run out into Kossuth Avenue.
Under the humanitarian doctrine no duty upon defendant to act was imposed until a situation of peril arose. No situation of peril arose until plaintiff started running into the street from the northwest corner of Kossuth and Rush Place. Plaintiff was oblivious to defendant's approaching automobile and obliviousness is a constitutive element of a humanitarian case on the theory of failure to warn. Pentecost v. St. Louis Merchants Bridge Term. R. Co., 334 Mo. 572, 66 S.W.2d 533. When plaintiff started running into Kossuth Avenue he was then at a point 35 feet west and 11 feet north of defendant's automobile. Clearly plaintiff was not in peril before the instant he entered into Kossuth Avenue for Charles Nenninger, Jr., testified that plaintiff was walking at the northwest corner of the intersection, "Then I seen the kid run out in the street and get hit by the car."
There is no testimony as to what rate of speed plaintiff was running as he ran into the street and into the side of defendant's automobile. The only testimony is that he ran fast and did not slacken his speed until he ran into and struck the automobile. The jury could reasonably infer that even a five year old boy could run the short distance this plaintiff ran at a speed of ten miles per hour for a man will walk at from four to five miles per hour.
The courts will take judicial notice that when a situation demanding some action arises some appreciable time is required for a motor driver, a motorman or an engineer to react to the appearance of danger to begin to avoid the situation. Unless a longer time affirmatively appears in the proof the courts recognize that such reaction time is three-quarters of a second. Yeaman v. Storms, 358 Mo. 774, 217 S.W. 2d 495, McGowan v. Wells, 324 Mo. 652, 24 S.W.2d 633, Shelton v. Thompson, 353 Mo. 964, 185 S.W.2d 777, 778, Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S.W.2d 51, Stark v. Berger, 344 Mo. 170, 125 S.W.2d 870. At 26 miles an hour, defendant's automobile was moving 39 feet a second, and in the three-quarters of a second of reaction time it ran about 30 feet, nearly across Rush Place. This evidence does not disclose at what angle plaintiff ran into Kossuth Avenue. The jury could reasonably have inferred from the testimony of the two eyewitnesses that it was some west of due south.
After plaintiff's peril arose and after the elapsed reaction time the defendant's automobile was within six feet of the west side of Rush Place and eleven feet south of the north curb of Kossuth. In an effort to avoid plaintiff, who clearly was oblivious and running west of south into Kossuth Street and looking west, defendant applied his brakes and swerved as sharply as he could to the left by turning the steering wheel. Plaintiff ran into the right side of defendant's automobile and fell to the street. He lay in the street behind the car and north of the center line of Kossuth.
It does not appear in the evidence how far west of a line drawn south into Kossuth from the northwest corner of Kossuth and Rush Place it was that plaintiff lay, nor does it appear how far he ran. From a reading of this transcript the jury could reasonably have inferred from the evidence *789 that it was but a short distance west. If the impact occurred when plaintiff was south of the center line of Kossuth that distance south of the center line was quite short for he lay in the street north of that center line. So, at most the jury could have inferred that plaintiff ran no more than 20 feet south and very few feet west. It is inferable that in all he ran no more than 25 or 30 feet. It is likewise inferable that, in all, less than two seconds elapsed from the time he first started to run until he ran into the side of the automobile. And, allowing reaction time, it is inferable that plaintiff ran into the automobile about 1¼ seconds after the duty arose for defendant to act to avoid the collision.
Under the undisputed evidence in this case, the just above stated inferences are the only possible inferences the jury could have made.
Under these circumstances does it appear that it is reasonably inferable that if defendant had sounded the warning horn on his car that the accident would have been avoided? That question must be answered in the negative.
A humanitarian case upon the theory of failure to warn is different from the usual humanitarian case upon the theory of failure to stop. The theory of failure to stop is predicated solely upon the basis that if the defendant himself had caused the instrumentality to be stopped that the injury would have been thereby avoided. But when plaintiff's theory and submission is predicated upon defendant's failure to warn there is presupposed (and time must be allowed for) a timely co-operative action by plaintiff in which to heed the warning and escape injury. This principle is recognized by the adjudicated cases. Harrow v. Kansas City Public Service Co., Mo.Sup., 223 S.W.2d 644.
This court has often written in recognition of the wisdom of that rule. To make a submissible jury case under the theory of failure to warn under the humanitarian doctrine the evidence must disclose that a reasonably sufficient time was afforded, after the duty to warn arose during which time it was reasonably possible for the horn on the car to have been sounded, for plaintiff to have heard, understood and heeded the horn and for the plaintiff then to have stopped short of running into the automobile. Smith v. Siedhoff, Mo.Sup., 209 S.W.2d 233, 237, Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W. 2d 764, 769, Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, Thomasson v. Henwood, 235 Mo.App. 1211, 146 S.W.2d 88, Bach v. Diekroeger, Mo. App., 184 S.W.2d 755.
The mere fact that the plaintiff was but five years old and defendant was an adult does not shift the burden of proof from plaintiff to defendant to show which, if either of them, was at fault for plaintiff running into the automobile. Lee v. Jones, 181 Mo. 291, 79 S.W. 927. And not even the humanitarian doctrine as recognized and applied in Missouri has affected the rule that the burden is on plaintiff to show that his injury was the direct and proximate result of the negligence alleged and proved. That the claimed negligence was the proximate cause of plaintiff's injury may not be left to speculation, guess or conjecture. Rose v. Thompson, supra, Yeaman v. Storms, supra, Smith v. Siedhoff, supra.
Could the jury have found under this evidence that it was reasonably inferable that if defendant had sounded the horn of his automobile, instead of using both hands to sharply swerve to the left and south, that the plaintiff would (because of the sounding of the horn) have refrained from running into the side of the automobile? Under this evidence and these circumstances it is clearly inferable (and the jury could not have inferred otherwise) that in the time available to defendant, he could not have both sounded the horn and swerved sharply to the left. Defendant had to choose, and almost instantly, to do one or the other. He chose to and did swerve sharply to the left. He admits that he did not sound the horn. Inasmuch as in the available time it was possible to do only one of the two things, and defendant did *790 do one of those two things, it was not negligence for defendant not to have done the other thing.
We concede (as must be conceded under the law) that if there had been sufficient time to sound the horn, and thereafter sufficient time for plaintiff to have heard and heeded the horn, and thereafter sufficient time for plaintiff to have stopped short of running into the automobile that a failure to sound the horn would have been negligent. The test of whether there was a causal connection between the failure to sound the horn and the injury is that it be reasonably inferable, without resort to speculation, that absent the negligent act, the injury would not have occurred. Rose v. Thompson, supra. It is reasonably inferable (and the jury could not infer otherwise) that plaintiff ran into the side of the automobile approximately 1¼ seconds after defendant's duty arose under the humanitarian doctrine. It may be inferred, because his ball was nearby, that plaintiff ran into the street intent upon retrieving his ball which was found near where he lay. But the actions of a five year old boy are wholly unpredictable. The courts hold that a five year old boy is too young to be guilty of contributory negligence, Hults v. Miller, Mo.App., 299 S.W. 85, 89, and for the very reason that he has no appreciation of danger. If there had been more time than 1¼ seconds, what reaction a five year old boy, running after a ball might have had, if a horn had been sounded, is entirely speculative.
Considering the fractional seconds available it is our conclusion from these facts that, without resort to guess and speculation, the jury could not have found that after defendant's duty arose there was time to sound the horn, time thereafter for plaintiff to have heard, understood the meaning of the sound of the horn and heeded it, and time thereafter for plaintiff to have stopped short of running into the automobile. At most a verdict for plaintiff upon this testimony would have been no more than sheer speculation and surmise as to what might possibly have occurred in fractional seconds. Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33, 35, Yeaman v. Storms, supra, Smith v. Siedhoff, supra. To us it seems inescapable, and from this undisputed evidence the jury could not draw any other inference, that in the available time, if defendant had chosen to sound the horn, instead of undertaking to avoid the collision by swerving, that if plaintiff had heard and understood and tried to stop, that he would have had no time or opportunity to stop before he ran into the side of the automobile. Cases above cited. And the trial jury obviously drew that inference and reached the same conclusion upon the submission to them. If defendant had taken the other alternative and had sounded the horn the jury could have but inferred that plaintiff would have reached the automobile in much less elapsed time, and at a time when the north side of the automobile was only 11 feet south of the point from which plaintiff started to run into Kossuth Avenue. It is a reasonable inference from the evidence, and from this undisputed evidence no other inference could have been drawn, that if defendant had chosen the other alternative and had undertaken to sound the horn, plaintiff running fast (as he was) would have been struck by the front of defendant's car with possibly much more serious and quite likely fatal results, and that under the circumstances neither alternative would have prevented plaintiff's collision with the automobile. We see no room for submission of the humanitarian doctrine under these facts.
In the light of our above stated conclusion it is unnecessary for us to examine the sole contention of error made in plaintiff's brief as to instruction 3. The judgment is affirmed. It is so ordered.
All concur.