**BERRY v. McDANIEL.**

No. 7263.

Springfield Court of Appeals.

Missouri.

June 17, 1954.

Cope & Ponder, Poplar Bluff, for appellant.

J. V. Conran, New Madrid, Charles T. Bloodworth, Jr., O. A. Tedrick, Poplar Bluff, for respondent.

STONE, Judge.

While walking from the north toward the south side of U. S. Highway 60 in Poplar Bluff, Missouri, plaintiff, Ray Berry, was struck by an east-bound automobile driven by defendant, H. G. McDaniel. Upon trial, plaintiff's cause of action for personal injuries was submitted solely upon alleged negligence under the humanitarian doctrine in failure to slacken speed or swerve. On this appeal from an adverse judgment for $1,500.00, defendant, who offered no evidence but stood on his motion to dismiss at the close of plaintiff's evidence, insists that plaintiff did not make a submissible case and, in the alternative, that certain instructions were erroneous.

During the noon hour on June 13, 1949, plaintiff, a young man, left his place of employment at Casey Motor Company in a panel body truck driven by his brother, Cecil Berry, for the purpose of going to plaintiff's home on the south side of Highway 60 just east of Palmer Slough Bridge. At the point of accident, Highway 60 runs in a general easterly and westerly direction, has a two-lane concrete roadway 18 feet in width, and is straight for a distance of not less than one-quarter of a mile to the west. Palmer Slough Bridge is about 150 feet in length. Plaintiff's brother drove in a westerly direction from Casey Motor Company to a point near the east end of the Palmer Slough Bridge, turned onto the north shoulder of the highway, and stopped with the left side of the panel body truck about one foot north of the north edge of the concrete roadway and with the front end of the truck about ten feet east of the east end of the bridge. Plaintiff alighted from the truck, walked around the rear end of it, stopped at the north edge of the concrete pavement, and looked first to the east and then to the west for approaching traffic. "There were no cars close".

At this point about 30 feet east of the east end of the Palmer Slough Bridge, plaintiff started "straight across" the two-lane concrete roadway "at a normal walk". He did not look again in either direction until he was in the east-bound traffic lane on the south side of the center line of the two-lane pavement, "about the middle from this black (center) line to the (south) edge of the highway", when he heard brakes, "turned sideway to look", and saw defendant's east-bound automobile bearing down upon him. As to the location of defendant's automobile when he then saw it, plaintiff said at different places in his testimony that "it was off the bridge", it was about 20 feet distant, and it was about 30 feet distant; but, he testified definitely that defendant's automobile was "on the bridge" when he heard brakes "squealing". Plaintiff "started to take another step and he (defendant) hit me right there", at a point about one step or 3 feet north of the south edge of the two-lane concrete roadway.

The vehicle driven by defendant was identified only as an automobile. There was no showing as to its make, model, size or weight, as to the kind, type or condition of the braking equipment, or as to the distance required, after application of the brakes at any stated speed, for slackening to any given speed or for stopping. The only estimate of the speed of defendant's automobile was given by Cecil Berry, plaintiff's brother, who said that, when he passed defendant's east-bound automobile "about the middle of the bridge" (after plaintiff had alighted from the panel body truck east of the bridge and Cecil thereafter had proceeded west onto the bridge), it was traveling "about 40 miles an hour—close to 40".

Under the humanitarian doctrine, defendant had no duty to act until plaintiff came into a position of imminent peril. McClanahan v. St. Louis Public Service Co.,

Mo.Sup., 251 S.W.2d 704, 707(2); Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, 788(4); Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 699(7); Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 498(1). It is only "'when such peril arises (that) the doctrine seizes upon the situation as it then exists and requires the one operating the dangerous instrumentality to exercise (proper) care * * *, and *thereafter* to avoid the infliction of the threatened injury, if he can do so with the means at hand and without jeopardizing the safety of himself and others'". Johnson v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 70, 75(6), and cases there cited. "Sometimes humanitarian cases require niceties in calculations for the doctrine begins to operate and seizes the facts when imminent peril arises." Vietmeier v. Voss, supra, 246 S.W.2d loc. cit. 787.

In determining upon this appeal whether plaintiff made a submissible case, we consider the evidence in the light of plaintiff's theory, as stated with commendable frankness by his counsel in oral argument, that plaintiff did not come into a position of imminent peril until he crossed the center line of the two-lane concrete pavement. On this theory, plaintiff traversed a distance of approximately 6 feet, i. e., from the center line to a point 3 feet north of the south edge of the concrete roadway, after he came into a position of imminent peril. Since plaintiff was crossing "at a normal walk", we may take judicial notice of the fact that he was moving at 2 to 3 miles per hour, or 2.9 to 4.4 feet per second, probably "'more nearly the latter.'" Romandel v. Kansas City Public Service Co., Mo.Sup., 254 S.W.2d 585, 590 (6); McGowan v. Wells, 324 Mo. 652, 24 S.W.2d 633, 639(6). Accordingly, the period of time during which plaintiff was in the zone of imminent peril prior to the accident was within the range between 1.36 seconds (at a walking rate of 3 miles per hour) and 2.07 seconds (at a walking rate of 2 miles per hour).

At 40 miles per hour (the only speed shown in the record), defendant's automobile was traveling 58.66 feet per second. *If* the speed of defendant's automobile had not been slackened prior to the accident (which is, as we shall note, an unwarranted premise more favorable to plaintiff than his evidence justifies), defendant's automobile would have traveled, after plaintiff came into a position of imminent peril, a distance within the range between 79.77 feet (on the basis of an elapsed time of 1.36 seconds prior to the accident) and 121.42 feet (on the basis of an elapsed time of 2.07 seconds). Our courts have "judicially noticed that a reaction time is required for a motorist to apply brakes on an automobile" [Dister v. Ludwig, supra, 240 S.W.2d loc. cit. 698(4); Yeaman v. Storms, supra, 217 S.W.2d loc. cit. 498(2)]; and, "unless a longer time affirmatively appears in the proof the courts recognize that such reaction time is three-quarters of a second" [Vietmeier v. Voss, supra, 246 S.W.2d loc. cit. 788(5), and cases there cited]. According to defendant such reaction time for application of brakes, his automobile traveled 44 feet (three-quarters of 58.66 feet) before the brakes could have taken hold, so, *after the reaction time had elapsed,* defendant's automobile would have been no farther from plaintiff than 35.77 feet (79.77 feet less 44 feet) to 77.42 feet (121.42 feet less 44 feet), probably nearer the shorter distance of 35.77 feet. And, since plaintiff was struck at a point about 30 feet east of the east end of the bridge, defendant's automobile would have been, after the reaction time had elapsed, within a range of 5.77 to 47.42 feet west of the east end of the bridge, again probably nearer the shorter distance of 5.77 feet.

All of the foregoing calculations assume that the speed of defendant's automobile was *undiminished* prior to the accident. Since, as we believe, plaintiff's evidence reasonably tends to show that the speed of defendant's automobile had been slackened to some extent prior to the accident (although there was no definite estimate as to its speed after plaintiff's brother, Cecil Berry, passed it "about the middle of the bridge"), the intervening distance between plaintiff and defendant's automobile when

plaintiff came into a position of imminent peril and similarly the intervening distance between plaintiff and defendant's automobile, after the reaction time of three-quarters of a second had elapsed, must have been somewhat less than has been indicated in the foregoing calculations. In short, we think it quite apparent from the record that, after plaintiff had entered the zone of imminent peril (under his theory of the case) by crossing the center line of the two-lane concrete roadway and after the reaction time had elapsed, defendant's automobile must have been near the east end of the Palmer Slough Bridge.

With the foregoing in mind, we turn specifically to consideration of the question as to whether plaintiff made a submissible case under the humanitarian doctrine for alleged failure to slacken speed. Plaintiff, himself, testified at one place in his testimony that *"it (defendant's automobile) squealed back here on the bridge"*, at another place that it was *"on the east end of the bridge"* when he *"looked up and heard the brakes"*, and still again that, *when he heard defendant's automobile "screaching", "it was partly on the bridge"*.

Plaintiff's wife, Violet Berry, saw her husband alight from the truck, stop at the north edge of the pavement (although "I didn't notice whether he looked both ways"), and apparently watched her husband cross the north half of the two-lane highway. "When I last saw him he was about in the middle of the highway. When I turned to go to the kitchen (to prepare lunch) *I heard the commotion of the wheels and the screaming of Dr. McDaniel's car* and I turned and just as I looked I saw the car strike him * * *", when "he lacked about one step of being off the south side of the highway."

Mrs. Allene Casey, plaintiff's sister, was standing in her mother's yard 50 to 100 yards distant. She "heard *a commotion on the bridge like brakes screaming*" and immediately looked at defendant's automobile which was then, as she stated at one place in her testimony, *"half way across"* the bridge or, as she stated at another place,

*"30 feet back from (west of) the east end"* of the bridge. *"(T)he brakes (were) screaming back on the bridge 30 feet."* "He was on the bridge when he put his brakes on." Cecil Berry, plaintiff's brother who was driving the panel body truck from which plaintiff alighted, said that, after passing defendant's automobile about the middle of the bridge, "I heard the brakes of a car".

We are mindful of the principle that, in determining whether a submissible case has been made, the evidence must be considered in a light most favorable to plaintiff, that his evidence must be accepted as true, and that he must be given the benefit of every legitimate inference to be reasonably drawn therefrom. Caswell v. St. Louis Public Service Co., Mo.Sup., 262 S.W.2d 40, 42(1). However, "The duty to make his case is upon plaintiff and he must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence" [Vietmeier v. Voss, supra, 246 S.W.2d loc. cit. 787(1)]; and, to bring any case within the humanitarian doctrine, more is required than a showing of a mere possibility that an accident might have been avoided. Yeaman v. Storms, supra, 217 S.W.2d loc. cit. 499(4); Paydon v. Globus, Mo.Sup., 262 S.W.2d 601, 604(2). " * * * (T)he rule seems to be well settled that even in an 'almost escaping case' there can be no recovery unless there is evidence, either direct or circumstantial, to show that in the time and space available, the speed of the defendant's train or car could have been sufficiently slackened to enable the plaintiff to escape injury." Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d 228, 235(14).

In the instant case, plaintiff's evidence does *not* show, either directly or by justifiable inference, that, in the time and space available after plaintiff entered a position of imminent peril, the speed of defendant's automobile could have been slackened sufficiently to have averted the accident; but, on the contrary, the evidence affirmatively shows that defendant applied

the brakes on his automobile while it was on the bridge or near the east end of the bridge, and thus indicates that the speed of defendant's automobile must have been slackened notwithstanding which the accident still occurred. Certainly, in the teeth of plaintiff's evidence, an inference that defendant did not attempt to slacken speed could not reasonably be indulged. We are of the opinion that, under the circumstances of this case, the jury could not have found that, after plaintiff came into a position of imminent peril, defendant could have averted the accident by slackening the speed of his automobile, without resorting to and engaging in nebulous and fanciful speculation, conjecture and surmise, upon which no judgment should be or can be permitted to rest. Turbett v. Thompson, Mo.Sup., 252 S.W.2d 319, 322–3; Young v. St. Louis Public Service Co., Mo.Sup., 250 S.W.2d 689; Harrow v. Kansas City Public Service Co., 361 Mo. 42, 233 S.W.2d 644, 647(4); Claridge v. Anzolone, 359 Mo. 65, 220 S.W. 2d 33, 35; Taylor v. Missouri, K. & T. R. Co., 357 Mo. 1086, 212 S.W.2d 412, 414; Meese v. Thompson, 344 Mo. 777, 129 S.W. 2d 847, 850; Sevedge v. Kansas City, St. L. & C. R. Co., 331 Mo. 312, 53 S.W.2d 284, 287(2); Davis v. McClanahan, Mo.App., 262 S.W.2d 65, 69–70(4, 6). Upon the record before us, plaintiff did not make a submissible case under the humanitarian doctrine for alleged failure to slacken speed; and, by submitting failure to slacken speed in the disjunctive in plaintiff's verdict-directing instruction, No. 4, reversible error was committed.

A different situation exists with respect to the other assignment of humanitarian negligence upon which the case was submitted, i. e., defendant's failure to turn or swerve his automobile to the left. Plaintiff stated that, after he first observed defendant's approaching east-bound automobile, he did not see it "move either way". Although the record does not show exactly what part of defendant's automobile struck plaintiff, Dennis Berry said that, after the accident, he noticed a dent in the grille on defendant's automobile; and, plaintiff's evidence adequately showed that, when he was struck, plaintiff was about one step or 3 feet north of the south edge of the two-lane concrete roadway. Cecil Berry, the driver of the panel body truck from which plaintiff alighted, testified that there was no westbound traffic on Highway 60 behind the panel body truck.

From the foregoing, we think it fairly inferable that, at the time of accident, the right side of defendant's automobile must have been close to (less than 3 feet from) its right-hand or south edge of the concrete roadway, and that defendant did not turn or swerve to the left prior to the accident, although there was no approaching westbound traffic which would have prevented his doing so. We have not overlooked plaintiff's admission that, if the wheels of an automobile are sliding with the brakes locked, the driver cannot turn in either direction; but, even if this admission were accepted as conclusive on the subject, the fact remains that plaintiff also testified that he saw no skidmarks made by defendant's automobile and that Dennis Berry, the only witness (but not an eyewitness to the accident) who testified about skidmarks, simply saw some marks which started "somewhere beyond (east of) the bridge—I didn't step it off". Plaintiff's evidence would not, in our opinion, compel a finding that defendant could not have turned or swerved because of his attempt to slacken speed.

"It is too generally and well known to require formal proof that present day automobiles respond quickly and accurately to the touch of the driver's hand on the steering wheel." Brown v. Callicotte, Mo.Sup., 73 S.W.2d 190, 193. Although defendant's automobile must have been within a range of less than 35.77 to 77.42 feet from plaintiff, after plaintiff entered the danger zone and the reaction time had elapsed, we may not say, as a matter of law, that defendant thereafter could not and should not have averted the accident by swerving to his left. If plaintiff was within 3 feet of the south edge of the concrete roadway when struck, a comparatively slight swerve to the left would have been sufficient to have averted the accident. Whether defendant was negligent in this respect was, we think, for the

jury. Brown v. Callicotte, supra; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S.W.2d 809, 811; Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 966.

Since this case must be retried, we will consider other complaints about instructions. *As offered* by defendant, Instruction D–A, which defined "position of imminent peril", closed with the following sentence: "In this case you are instructed that plaintiff, Ray Berry, was not in a position of imminent peril until he reached a position where under the conditions and circumstances existing the defendant in the exercise of the highest degree of care could and should have seen plaintiff *and should have realized that he would not or could not stop or change his course before coming into the path of the automobile.*" This instruction, *as given,* was modified by striking of the italicized portion over defendant's objection. The clear and unmistakable inference, which a jury might be expected to draw from Instruction D–A, as thus modified, would be that plaintiff came into a position of imminent peril, and thus that defendant's duty to act under the humanitarian doctrine arose, when plaintiff reached a position where "defendant in the exercise of the highest degree of care could and should have seen plaintiff".

This obviously broadened the zone of imminent peril beyond proper limits. For, under the evidence the jury might have found that defendant could have seen plaintiff, while he was standing at the north edge of the concrete roadway and was looking in both directions for approaching traffic (at which point plaintiff certainly was not in imminent peril), and the jury would have had no difficulty in finding that defendant could have seen plaintiff at all times after plaintiff stepped onto the concrete roadway (although, as his counsel

frankly stated, plaintiff did not enter the danger zone until he reached the center line of the two-lane pavement). The zone of imminent peril was defined properly by Instruction D–A as offered [Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S.W.2d 200, 202(4)]; and, as modified, that instruction clearly violated the well-established principle that a defendant has no duty to act under the humanitarian doctrine so long as plaintiff simply is *approaching* a position of imminent peril [Newman v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 45, 48(2, 3); Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, 10(10); Hilton v. Terminal R. Ass'n of St. Louis, 345 Mo. 987, 137 S.W. 2d 520, 522–3(4, 5)].

Defendant also complains because Instruction D–C was modified, over defendant's objection, by striking the second paragraph thereof in which defendant sought to have the jury instructed, in part, that "while plaintiff, Ray Berry, was still in a place of safety and at such distance from the path of defendant's east-bound automobile to yet allow plaintiff a reasonable time to stop before walking and crossing in front of his said automobile, the defendant was entitled to assume that the plaintiff would stop before walking in front of said automobile and into danger of being struck thereby".

In view of the criticism by our Supreme Court in Wilt v. Moody, Mo.Sup., 254 S.W. 2d 15, 21, of instructions which tell the jury that a motorist has the right to *assume* that others "will obey the law" (it being said that such does "not accord with the strict requirement of our motor vehicle law, Section 304.010 RSMo 1949, V.A.M. S."), we are unwilling to say in the instant case that modification of Instruction D–C, in the respect hereinbefore noted, was erroneous.[1]

1. However, in this connection, consult and compare See v. Wabash R. Co., Mo.Sup., 259 S.W.2d 828, 831(4); Turbett v. Thompson, Mo.Sup., 252 S.W.2d 319, 321 (3); Johnson v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 70, 76(8); Wilkerson v. St. Louis Public Service

Co., Mo.Sup., 243 S.W.2d 953, 955; Harrow v. Kansas City Public Service Co., 361 Mo. 42, 233 S.W.2d 644, 647(4); Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, 10(11); Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W.2d 764, 768; Smithers v.

Defendant also assigns error in the giving of plaintiff's Instruction 3 on the measure of damages, in that the jury thereby was permitted to take into consideration, among other things, "the permanent injuries, if any, which plaintiff has suffered", when, as defendant asserts, "there was no evidence on which to base a finding of permanent injury". No medical witness was called in this case. Plaintiff testified that "I had a broken leg and my ear was tore loose from the side of my head—I had bruises and cuts on my side and on my head". His leg was in a cast for about 6 weeks, and he used a walking iron for another 6 weeks. Thereafter, plaintiff "didn't try to work full-time" but "just worked extra what I could", because "my ankle still hurt a good bit and I was having headaches then". With respect to the headaches, he stated that "I had them back (sic) for about four weeks"; and, in response to the abbreviated inquiry of his counsel, "And after that?" plaintiff added, "I had them maybe once a week or every two weeks, I would have pretty bad headaches". However, all of plaintiff's testimony about his injuries was *in the past tense,* and careful perusal of the record shows that plaintiff, himself, did not state that he had any disability or injury at the time of trial, more than three years after the date of accident.

" 'To recover damages for permanent injury the permanency of the injury must be shown with reasonable certainty and while absolute certainty is not required mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor.' " Weiner v. St. Louis Public Service Co., Mo.Sup., 87 S.W. 2d 191, 192(1). The injuries, concerning which plaintiff testified as a lay witness, were not such as to permit an award of damages for permanent disability or injuries, absent substantial evidence of their permanency; and, upon the record before us, it clearly was erroneous to include the element of permanent injuries in Instruction 3. State ex rel. Kansas City Public Barker, 341 Mo. 1017, 111 S.W.2d 47, 52-3; Wheeler v. Breeding, Mo.App., 109 S.W.2d 1237, 1242; Dean v. Moceri,

Service Co. v. Shain, 350 Mo. 316, 165 S.W. 2d 428, 430-1(2-5).

Although the propriety of the giving of defendant's sole cause instruction, No. D-B, is not before us and is not ruled, in the interest of minimizing the possibility of error on retrial we add the comment that Instruction D-B, in the language and form given, appears to be subject to at least some of the criticisms which have been lodged against sole cause instructions in humanitarian cases in Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, 747(5), Brandenburg v. Kasparian, Mo.Sup., 247 S.W.2d 806, Pulley v. Scott, 362 Mo. 1217, 247 S.W.2d 767, 769-770(4), and Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892, 895-897(8).

For the errors noted, this cause should be reversed and remanded for another trial. It is so ordered.

McDOWELL, P. J., and BLAIR, J., concur.

Mo.App., 87 S.W.2d 218, 222; Section 480, Restatement of Law of Torts.