**Everett LEAP, Respondent,**

**v.**

**Eileen Margaret GANGELHOFF, Appellant.**

**No. 52422.**

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

Motion for Rehearing or to Transfer
to Court en Banc.

Denied July 10, 1967.

Morgan Moulder, Camdenton, Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Warren S. Stafford, Springfield, for respondent.

Tweedie Fisher, Jefferson City, for appellant.

HIGGINS, Commissioner.

Action for damages for personal injuries in which defendant appeals from verdict and judgment for plaintiff for $18,500.

Plaintiff's case was submitted under the humanitarian doctrine hypothesizing defendant's alleged failure to swerve or sound a warning as negligent acts. Appellant contends that plaintiff's case failed because he did not establish when he came into a position of imminent peril and that defendant then had the present ability with means at hand to have averted the injury to plaintiff.

This action arose from an occurrence on July 22, 1964, at a point on Missouri State Highway No. 5 approximately three miles north of Camdenton, Missouri. The highway there runs generally north and south, was generally level at the scene, and had an asphalt surface 22 feet wide divided into two lanes by a painted center line. There was a slight hill to the south of the scene from which the highway sloped downward for approximately 300 feet and then was level for the remaining 700 feet north to the scene. The 81-year-old plaintiff lived on the east side of the highway at the scene; his mailbox was located on the west side of the highway at this point. He was blind in his right eye and had limited vision in his left eye. He could see 500 feet and was in good health otherwise.

Defendant was a 51-year-old lady with 34 years of driving experience. She and her family had left Hot Springs, Arkansas, at approximately 8 a. m. on the day of the accident and she was driving a 1961 Rambler automobile north on Highway 5. The Rambler was in good condition; the day was clear and warm. She was traveling at a speed of about 40 miles per hour as she crested the hill south of the scene soon after 3 p. m., the road was clear, and she saw plaintiff "down at the bottom of the hill, as I came down the hill, I saw him at his mailbox." When she first saw plaintiff at his mailbox she was "between two and three blocks" away. She saw plaintiff turn from the mailbox and "take two steps or so onto the asphalt and stop." She then reduced her speed to about 35 miles per hour because "I thought he was going to cross the street"; she was then a block and a half or two blocks away from plaintiff. At this point, he then "dashed" across the highway. Defendant applied her brakes and turned to the right and hit plaintiff at a point where plaintiff was at the east edge of the asphalt surface at the east shoulder. Plaintiff "slid over the right front fender, and he threw his arm back, he rolled off into the ditch" on the east side of the road. There was nothing to keep defendant from turning to the left or west and she never sounded her horn. Defendant's Rambler came to rest with its right front in the east ditch and its left rear on the pavement; the right front was damaged. Seventy-five feet of skid marks were measured by the highway patrolman leading to defendant's Rambler.

Plaintiff had lived at the accident scene for about 30 years. On this date he listened to the three o'clock news, went to the door of his home, and saw the mail carrier stop at his mailbox. He walked across the highway to the mailbox. "I got the mail out of the box, turned around and stepped on the blacktop. I looked to the north and I didn't see nobody. I looked to the south, and I didn't see nobody. I started right on back across the highway. * * * I didn't look either way after I started across the highway. * * * I * * * just walked

my normal gait until I got clear across the road." He was off the highway, on the shoulder, when hit by defendant's automobile. His first knowledge of defendant's automobile "was the brakes squealing, and I turned to look in the right direction and the car was in seven or eight feet of me when I turned to look." It was just a split second until impact. "I had no time to even think." He told the patrolman that he didn't see the car approaching and that he tried to get off the road after he heard it. Plaintiff sustained serious injuries which are not in question on this appeal.

Plaintiff adduced evidence on reaction time, stopping distances, average walking speed, and the distance automobiles travel at various speeds, by James Melton, an engineer whose qualifications were not questioned. He used three fourths of a second as average reaction time where no other reaction time is shown, and stated a standard or average block to be about 300 feet. He also used 2.9 feet per second to 4.5 feet per second as average walking speed, and stated that an automobile would travel 51.5 feet per second at 35 miles per hour and 59 feet per second at 40 miles per hour. In 4¾ seconds a man walking at 2.9 feet per second travels about 14 feet; at 4.5 feet per second, about 22 feet. In 4¾ seconds a car traveling 35 miles per hour travels 242 feet; at 40 miles per hour, 277 feet. He stated that defendant could have stopped her automobile within 107.4 feet at 35 miles per hour and within 132.2 feet at 40 miles per hour, these distances including the three-fourths' second reaction time.

■ The first and basic fact of liability under the humanitarian doctrine is a position of imminent peril, Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484 [1]; Lane v. Wilson, Mo.App., 390 S.W. 2d 943, 947 [3], now known as immediate danger. See Committee Comment, MAI 17.14. Such peril or danger must be imminent, certain, immediate, and impending, a likelihood or bare possibility of injury being insufficient, Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420; Lane v. Wilson, supra, 390 S.W.2d l. c. 947 [4], and the burden is on plaintiff to show when and where he came into imminent peril, Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787 [1]; Yarrington v. Lininger, Mo., 327 S. W.2d 104, 109 [7], as well as to show that defendant had the ability to warn or swerve after the immediate danger existed. White v. Burkeybile, Mo., 386 S.W.2d 418; Smith v. Siedhoff, Mo., 209 S.W.2d 233.

■ Generally, the point of plaintiff's position of imminent peril or immediate danger is for the jury to determine. Kuehn v. Hahn, Mo., 380 S.W.2d 445, 448 [3]; Yarrington v. Lininger, supra, 327 S.W.2d l. c. 109 [6]; Silver v. Westlake, Mo., 248 S.W.2d 628, 632 [1, 2]. In this case there can be no doubt that plaintiff came into a position of imminent peril when he crossed the center line of the two-lane asphalt pavement, regardless of any obliviousness which would have extended his zone of peril. Berry v. McDaniel, Mo.App., 269 S.W.2d 666, 669 [2]. The evidence discloses that at that time and place there was no other traffic blocking or using the road and plaintiff was in plain view of defendant at all times. There was evidence of plaintiff's walking speed to show that it would have taken him from 2.44 seconds to 3.79 seconds to cross the eleven feet of defendant's northbound traffic lane to reach the point in the east shoulder where he was struck by defendant. There also was evidence showing defendant's distance from plaintiff when first seen at his mailbox and later as he proceeded across the pavement. In addition, the evidence showed stopping distances and distances defendant would travel at her stated speed of 35 miles per hour. Admittedly defendant sounded no warning. Under these circumstances, it was for the jury to say whether defendant could have swerved her car or sounded a warning in time to have averted the accident, Schmitt v. Shuplak, Mo.App., 42 S.W.2d 959, 962 [2]; Berry v. McDaniel, supra, 269 S.W.2d l. c. 669–671 [2–10], particularly with the

**68**

quick and accurate response of present-day automobiles to the driver's touch. Kuehn v. Hahn, supra, 380 S.W.2d 1. c. 449.

■ This case originated in Camden County. Prior to a first trial defendant disqualified the regular trial judge, Honorable Claude E. Curtis, and Honorable Sam C. Blair sat in his place. The first trial resulted in a verdict for plaintiff which was set aside by Judge Blair. Before a second trial Judge Blair became a judge on the Kansas City Court of Appeals and Honorable James T. Riley assumed jurisdiction of the case. Defendant then asked for a change of venue and stipulated to a transfer of the case to Wright County where Honorable Garner L. Moody was the regular judge. Prior to this second·trial defendant sought to disqualify Judge Moody and he overruled the application. Appellant charges that Judge Moody erred in refusing her application to disqualify him but, as recognized by appellant, Civil Rule 51.-03(b), V.A.M.R. provides that "in no event shall more than one disqualification of judge be granted to either party." Defendant thus exhausted her right to disqualify a judge when she disqualified Judge Curtis in Camden County. Griggs v. Miller, Mo., 374 S.W.2d 119, 121 [2].

■ During the direct examination of Dr. Charles Ash, defendant was granted leave to ask a preliminary question. That leave was extended to a lengthy cross-examination of Doctor Ash respecting a urinary condition claimed by plaintiff to be a result of the accident. At one point a colloquy between defendant's lawyer and the court produced an observation by the court, "I understand that is what you got him to say just then." Appellant charges error in that "such remark on a vital issue of fact referred to answers of plaintiff's 'doctor sought by defendant, the effect of which prejudiced the minds of the jury" Appellant supports her charge by arguing "the question of pre-existing urinary condition to the eighty-one-year-old plaintiff

was hotly in issue." Obviously this charge and argument go only to the injuries and damages and there is no claim that the damages were excessive, the only area in which appellant says she was prejudiced by the comment.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.