Dessie Irene PANKEY, Plaintiff-Respondent,

v.

Orville J. CLAYWELL, Defendant-Appellant.

No. 32706.

St. Louis Court of Appeals.

Missouri.

June 13, 1967.

———◆———

Roberts & Roberts, Raymond R. Roberts, Farmington, for defendant-appellant.

Robert A. McIlrath, Flat River, Charles G. Hyler, Farmington, for plaintiff-respondent.

THEODORE McMILLIAN, Special Judge.

This is an action for damages arising out of personal injuries that plaintiff, a pedestrian, suffered when she was struck by defendant's automobile. Verdict and judgment for $2,500.00 was for the plaintiff, and the defendant has appealed. We shall refer to the parties as they were designated in the trial court.

There is but one point raised upon the appeal; that is, that the plaintiff failed to make a submissible case under the humanitarian doctrine of negligent failure to slacken speed, or to swerve the automobile, or to sound a warning of its approach.

The accident occurred on March 27, 1965, on Science Street at its intersection with Main and Rinke Streets in Flat River, Missouri. For our purposes, Main Street runs east and west; however, west of the intersection, it bends northwestwardly. Westbound travel on Main is upgrade. Science Street runs to the north and south and enters Main Street from the south but does not cross it. On the southwest corner of Main and Science Streets is Schramm's building.

Science Street is 45 feet wide, sidewalk to sidewalk. The traveled portion of the pavement on Science is 22.5 feet wide. On each side of the traveled portion of Science (between the pavement and the sidewalk) is an 11 foot blacktop parking strip. On the west side of Science Street, the sidewalk is 2.5 to 3 feet above the street level. Steps, located on the southwest corner of Main and Science Streets, lead from the sidewalk to the level of Science. All traffic at the intersection is controlled by stop signs.

Plaintiff had been shopping and was walking eastwardly on the south side of Main Street by the side of the Schramm building. She testified that she walked down the steps to the level of Science Street; that she saw some cars stopped at the stop sign on Main Street (eastbound) and some stopped at the stop sign for northbound Science Street travel; however, she did not see any cars at the stop sign for westbound travel on Main Street. Then, testifying further, she said she intended to walk eastwardly across Science and had walked about 12 feet over the blacktop when she looked for cars again, and she saw none at either the Main or Science Street stop signs. Next, she started across Science Street (traveled portion), and had reached the center of the street "* * * and done and stepped my right foot across the center * * * line" when she saw a white car for the first time. She testified further that she did not know how far

it was from her; she saw it was going to hit her; she did not hear the sound of either brakes squealing or a horn; and thereafter, she had no recollection.

Plaintiff's witness, William E. Brady, testified that he was stopped at the westbound stop sign on Main Street, east of the intersection; that another car, not involved in the accident, was in front of him; that he saw defendant's right fender strike plaintiff when she was right of the center of defendant's car; that plaintiff landed near the center of the street; that he saw defendant's car going "west" (south) in a parallel position on Science Street; that he estimated the speed of defendant's car to be between 8 to 12 miles per hour, and plaintiff was about 5 feet from defendant's car when the witness saw her for the first time. From his vantage point, he placed the accident 30–35 yards away.

Plaintiff's son, James Pankey, who arrived after the accident, testified (looking at Plaintiff's Exhibit E, a picture looking westwardly on Main Street) that the stop sign shown in the exhibit had been moved into the position shown thereon after the accident. In his opinion, it was about 45 feet back to the east. He also said that on the scene, he saw skidmarks approximately 13.6 feet long leading up to defendant's car; and that they began at the crosswalk from Schramm's building, in the southbound lane on Science and continued southwardly 8–10 inches into the northbound lane. He estimated that the distance from the westbound stop sign on Main, as shown in Exhibit E, to the center line of Science to be about 45 feet.

Defendant, in his own behalf, testified that he was on his way home that afternoon. His route was to go westwardly on Main to Science Street and then to make a left turn on to Science. He said he stopped at the stop sign, which according to him had been placed in the position shown in Plaintiff's Exhibit E prior to the accident; that he saw plaintiff for the first

time when she was perhaps 8–10 feet from his automobile, and that she was about half way into defendant's lane. She was not in the crosswalk but 15–16 feet south of it; that his speed by then was 10–15 miles per hour, and plaintiff was near the right side of his car; and that as he struck her, he swerved to the left. Defendant further testified that a person walking down the Main Street steps and across the pavement would be visible for about 200–300 feet.

Defendant's witness, Officer James L. White, testified also that the westbound stop sign on Main Street had been placed as shown in Exhibit E prior to the accident; that the skidmarks found and measured by him were all centered in the southbound lane of Science; that they commenced 7 feet south of the crosswalk across Science. He said further that he found plaintiff lying on the center line 20 feet south of the crosswalk; and that plaintiff's left shoe was under the left front tire of defendant's automobile.

 In passing upon the sufficiency of the evidence to make a submissible case, we must review the facts and the reasonable inferences to be drawn from them in a light most favorable to the plaintiff's case. In so doing, we disregard defendant's evidence unless it aids plaintiff's case. Brown v. Wooderson, Mo., 362 S.W.2d 525; and Kirks v. Waller, Mo., 341 S.W.2d 860.

 Under the humanitarian doctrine, no duty to act is imposed upon a defendant until a situation of immediate danger arises. At this time only, does the doctrine commence to operate, and the antecedent negligence of either the plaintiff or the defendant is not to be considered. Mayfield v. Kansas City Southern R. Co., 337 Mo. 79; 85 S.W.2d 116; Bafaro v. Pezzani, Mo. App., 376 S.W.2d 631, 633(4). The classic statements of the essential ingredients of a humanitarian case as set forth in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482 are: (1) Plaintiff was in a position of peril; (2) defendant had notice thereof

(if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the means at hand to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof, plaintiff was injured.

The application of the doctrine in no way has altered the rule that the burden of proof is upon the plaintiff; Moore v. Ervin, Mo., 374 S.W.2d 142, 149 (3, 4); Vietmeier v. Voss, Mo., 246 S.W.2d 785; and the claimed negligence of the defendant cannot be left to speculation, guess, or conjecture. It is stated in Vietmeier v. Voss, supra:

"* * * Sometimes humanitarian cases require niceties in calculations for the doctrine begins to operate and seizes the facts when imminent peril arises. The duty to make his case is upon plaintiff and he must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence. If the evidence presents a situation from which liability or nonliability may be equally inferred, the court must declare that no case has been made. (citing cases) This involves the question of whether the evidence is in truth substantial, which is one of law, as distinguished from mere conflict in the evidence, which is one of fact for the jury."

Of course, the first essential question for our determination is when did the plaintiff, if so, come into a position of immediate danger. From the evidence, a jury could have found that plaintiff was in a position of peril from the last time she looked back to the north (left) and took her first step onto the southbound traveled portion of Science Street, and that this peril continued up until the moment of impact. Also, the jury could have found

further that as plaintiff walked the distance to the center line, she was oblivious to any peril.

The defendant said he did not see plaintiff until she was 8 to 10 feet from his automobile, but this is immaterial on the issue of humanitarian negligence. Because in the exercise of the highest degree of care, on public streets, the defendant was under a duty to keep a lookout and where such a duty exists, the humanitarian rule is predicated upon discoverable, as well as discovered, peril. Krause v. Pitcairn, 350 Mo. 339, 167 S.W.2d 74, 76; Womack v. Missouri Pacific R. Co., 337 Mo. 1160, 88 S.W.2d 368. "'A failure to keep a lookout, *at a place where there is a duty to do so,* is not, under our Missouri humanitarian rule, any excuse for failing to prevent injury to one whose peril could have been discovered in time to prevent his injury if such a lookout had been kept. In other words, in spite of a failure to keep a lookout, the humanitarian doctrine may come into operation, not because that is in itself humanitarian negligence, but because we have, *at places where there is a duty to keep a lookout,* extended the humanitarian rule to discoverable as well as discovered peril. * * * If there was a duty to keep a lookout, the question is could he have been seen in time if it had been kept, and not was a lookout kept.' Mayfield v. Kansas City Southern Ry. Co., (Mo.Sup.) 85 S.W.2d 116, 123." Consequently, under plaintiff's evidence, a jury could reasonably find that after plaintiff came into a position of peril, she walked a distance of approximately 11.25 feet to the center line which, at the rate of 2 to 3 miles per hour, or 2.9 to 4.4 feet per second, would have consumed approximately 3.75 or 2.4 seconds. DeLay v. Ward, 364 Mo. 431, 262 S.W.2d 628.

The next crucial question for decision is what could the jury have found concerning defendant's ability, in the exercise of the highest degree of care, to avert the casualty after plaintiff came into a position

of discoverable peril. Kuehn v. Hahn, Mo., 380 S.W.2d 445. In other words, is there any substantial evidence that defendant could have, after plaintiff came into a position of immediate, discoverable peril, avoided the accident in the time left with the means at hand and with safety to himself and others? Plaintiff submits, in this respect, that defendant could have slackened his speed, swerved his automobile, or sounded a warning of his approach, citing Breitschaft v. Wyatt, Mo.App., 167 S.W. 2d 931; and Kuehn v. Hahn, supra.

In the Breitschaft case, plaintiff was struck by defendant's left-turning vehicle while standing about 9 feet from the curb. There, too, the plaintiff neither saw nor knew what struck him, and defendant likewise, as here, had an unobstructed view of the intersection from the time plaintiff left the curb up to the point of impact. Here the similarities stop, for in that case, there was never any question as to where the defendant was at the time plaintiff came into a position of discoverable peril. Defendant said himself that when he was 40–50 feet south of the intersection, he slowed down to 10–15 miles per hour and that he could stop his vehicle in 4 or 5 feet. The Court held under those circumstances, it was a jury question as to whether or not defendant had the ability to stop his vehicle, in the exercise of the highest degree of care, after plaintiff was in a position of discoverable immediate danger.

In Loyd v. Moore, Mo.App., 390 S.W.2d 951, a more appropriate case, plaintiff, a pedestrian, walked a distance of 30 feet when he was struck by defendant's left-turning vehicle. We held that a jury could have reasonably found that from the time defendant left the stop sign to the time and point of impact (89.5 feet away), defendant, in the exercise of the highest degree of care, could have seen plaintiff continuously as he moved (more than 30 feet) to the point of impact. We reached that conclusion on the basis that plaintiff

said as he left the northeast corner, he saw four cars to his right coming south. He then walked to a point 3 to 4 feet east of the center of Goodfellow where he stopped because the southbound cars had come to a stop. In the same connection, defendant said when she was stopped at the stop sign on the southwest corner, she, too, saw cars coming south which she realized had to stop for the stop sign for southbound traffic; therefore, she proceeded to make her left turn. We said, under those circumstances, a jury could have reasonably found from defendant's testimony that as she proceeded out to the point where she began to make her left turn, the southbound cars she had observed had come to a stop. Therefore, while she was moving her car from a stopped position at the stop sign to the point where she proceeded to make her left turn, which was three-fourths of the way out into the western lanes of Goodfellow, plaintiff was walking from the northeast curb to the point where he stopped. So, here, too, there was evidence (22.5 ft.) from which a jury could locate defendant at the time plaintiff came into peril up to the time of impact.

■ In the instant case, there is no evidence, direct or indirect, from which we may locate the automobile of the defendant at the moment plaintiff came into a position of discoverable imminent peril. Absent this one fact, there are no niceties in calculations for the doctrine to operate and seize the facts when imminent peril arises. The duty to make the case is upon plaintiff and the claimed negligence of the defendant cannot be left to speculation, guess, or conjecture. Vietmeier v. Voss, supra; Moore v. Ervin, supra, and Reese v. St. Louis Public Service Co., Mo.App., 368 S.W.2d 540.

■ Inasmuch as we do not know where defendant's automobile was at the time plaintiff came into a position of discoverable peril, we hold that plaintiff did not make a submissible case on any theory.

This for the reason that plaintiff's evidence has failed to remove defendant's ability to slacken his speed, swerve his automobile, or to warn of his approach from the realm of speculation. Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494, (8, 9). Therefore, we hold that the trial court committed prejudicial error in submitting the cause of action to the jury upon humanitarian negligence. Accordingly, the verdict and judgment is reversed.

ANDERSON, P. J., and WOLFE, J., concur.